UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

            v.            CRIMINAL NO. 08-306 (RMC)

UNITED STATES PROTECTION AND
      INVESTIGATIONS, LLC,
DELMAR D. SPIER,
BARBARA E. SPIER,
WILLIAM F. DUPRE,
     and
BEHZAD MEHR,

     **Defendants.**
_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO SUPPRESS AND RENEWED MOTION TO COMPEL DISCOVERY

The United States, through undersigned counsel, hereby responds to Defendants' Joint Motion to Suppress and Renewed Motion to Compel Discovery. The Court should deny the defendants' motion to suppress because the defendants have failed to show by preponderance of the evidence that their Fourth Amendment rights were violated by any of the searches. First, the individual defendants have failed to show that they have standing to seek suppression of evidence seized from the corporate defendant's offices. Second, the searches conducted on USPI's offices in Kabul, Afghanistan were done in compliance with Afghan law. Third, the search warrants issued by Federal Magistrate Judge Frances H. Stacey of the Southern District of Texas were supported by a reasonable finding of probable cause, were sufficiently particularized, and were not overly broad. Finally, the defendants' renewed motion for documents "regarding the circumstances of the searches in Kabul and communications relating to whether U.S.

agents had a good faith basis to believe that the searches were in compliance with Afghan law," Defs.' Mem., at 1, has been denied twice already by the Court. Accordingly, and for the reasons more thoroughly discussed below, the defendants' motions should be denied.

## BACKGROUND

On August 28, 2007, federal agents in the United States and law enforcement personnel in Afghanistan searched USPI's four corporate offices – two in Kabul, Afghanistan, one in Houston, Texas, and one in Waller, Texas. On August 24, 2007, Special Agent Elbert Cruz of the United States Agency for International Development, Office of the Inspector General ("USAID-OIG") presented an affidavit in support of applications to search USPI's offices in Houston and Waller, Texas for violations of 18 U.S.C. Sections 286 (Conspiracy), 287 (False Claims), 1001 (False Statements), 1516 and 1519 (Obstruction) to Federal Magistrate Judge Frances H. Stacey in the Southern District of Texas. Agent Cruz's affidavit provided approximately 15 pages of detailed information that fruits and instrumentalities of these crimes would be found at USPI's corporate offices. Based upon the affidavit of Agent Cruz, Judge Stacey found probable cause to issue the search warrants.

Judge Stacey incorporated Agent Cruz's affidavit in the search warrant. However, on August 27, 2007, Judge Stacey amended the affidavit as incorporated because the descriptions of the items to be seized identified in the affidavit and Attachments B to the two search warrants were inconsistent. The affidavit included a time restriction while Attachment B did not. Judge Stacey accordingly authorized agents to seize evidence pursuant to the items listed in Attachment B. Judge Stacey also authorized federal agents

to search USPI's offices at 7 a.m. on August 28, 2007 but granted permission to serve the warrants earlier based upon Agent's Cruz's understanding that search warrants would be executed in Kabul, Afghanistan 10 hours earlier and concern of potential destruction of evidence.

Afghan law enforcement searched USPI's offices in Kabul, Afghanistan. Afghan prosecutors authorized and attended the searches based upon their finding of reasonable suspicion that criminal activity was being conducted at USPI's offices. Afghan law enforcement was advised of USAID-OIG's investigation and determined that the conduct at issue also violated Afghan law. Afghan law enforcement entered USPI's offices and secured the premises, federal agents were present thereafter to observe and assist Afghan law enforcement as needed. Due to security risks associated with the execution of *any* search in the City of Kabul, law enforcement was permitted 30 minutes to search one of USPI's offices and one hour for the other. After the items were seized, they were taken into the custody of General Qader Abdul Safee, the Chief Prosecutor for the City of Kabul, who was present during the searches of one of USPI's offices. It was later transferred from General Safee to the custody of Special Agent Marvin Burgos of USAID-OIG.

## ARGUMENT

**THE COURT SHOULD DENY THE DEFENDANTS' JOINT MOTION TO SUPPRESS AND RENEWED MOTION FOR DISCOVERY.**

**A.     The Individual Defendants Lack Standing Under The Fourth Amendment To Challenge The Searches Of USPI's Corporate Offices In Kabul, Afghanistan And Houston And Waller, Texas.**

Although recognizing that they bear the burden to show by preponderance of the evidence that the searches violated their Fourth Amendment rights, the individual

3

defendants provide no analysis – factually or legally – showing that they having standing to challenge the searches of the corporate defendant's offices.  "It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (Emphasis in original.)  "Property used for commercial purposes is treated differently for Fourth Amendment purposes from residential property." *Minnesota v. Carter,* 525 U.S. 83, 90 (1998); *see also New York v. Burger,* 482 U.S. 691, 700 (1987) ("An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home."). Unlike the nearly absolute protection of a residence, the "great variety of work environments" requires analysis of reasonable expectations "on a case-by-case basis." *O'Connor v. Ortega,* 480 U.S. 709, 718 (1987).

Courts have therefore considered a number of factors when determining whether a defendant has a reasonable expectation of privacy for items seized during the search of a business.  These factors include (1) whether the item seized is personal property or otherwise kept in a private place separate from other work-related material; (2) whether the defendant had custody or immediate control of the item when officers seized it; and (3) whether the defendant took precautions on his own behalf to secure the place searched or things seized from any interference without his authorization. *United States v. SDI Future Health, Inc.,* 568 F.3d 684, 698 (9th Cir. 2009); *see also United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir. 1991); *United States v. Mohney,* 949 F.2d 1397, 1403 (6th

Cir. 1991); *United States v. Stallings*, 28 F.3d 58, 61 (8th Cir.1994); *United States v. Anderson*, 154 F.3d 1225, 1230-32 (10th Cir. 1998).

It is therefore clear that the ability to challenge the search of a corporate office is limited to persons aggrieved and is not a blanket privilege to all corporate employees or shareholders.  *United States v. Mohney,* 949 F.2d at 1403.  Even so, the individual defendants fail to describe how any or all of them had a reasonable expectation of privacy for any of the items seized.  The individual defendants have not proffered that any of the items were seized from offices belonging to them or were in their exclusive control.  Nor could they.  Indeed, at the time of the searches in August 2007, Defendants Delmar and Barbara Spier were not regularly working in Kabul.  Defendant Barbara Spier appears to have been working largely from her home.  Further, as shown on the inventories, much of the seized items were from shared office areas and file cabinets that were accessible to all employees.  Likewise, Defendant William Dupre did not work in the Houston and Waller offices and certainly would have no reasonable expectation of privacy as to any of the items seized in those locations.  Again, many of the seized items were obtained from shared office areas and file cabinets. To the extent that *any* of the seized items were found in offices that were not the offices of the individual defendants bringing the instant motion, they would certainly have no reasonable expectation of privacy as to those items. Because the defendants have not met and cannot meet their burden of showing that they had a reasonable expectation of privacy as to the items seized at the corporate defendant's offices, they lack standing to challenge the search under the Fourth Amendment.

B.   **The Searches Of USPI's Offices In Kabul, Afghanistan By Afghan Law Enforcement Were Reasonable.**

The Fourth Amendment applies to foreign searches and seizures conducted against United States citizens and resident aliens in three situations: (1) where the search is conducted exclusively by United States agents, *United States v. Conroy,* 589 F.2d 1258, 1264 (5th Cir. 1994); (2) where foreign law enforcement agents act on behalf of the United States government, *United States v. Rose,* 570 F.2d 1358, 1362 (9th Cir. 1978); and (3) where the United States sufficiently participates in the search such that it represents a "joint venture," *United States v. Behety,* 32 F.3d 503, 510 (11th Cir. 1994). The United States does not dispute application of the Fourth Amendment to the searches of USPI's offices in Afghanistan.[1]

The reasonableness requirement applies to all foreign searches to which Fourth Amendment protections extend. That assessment is fact-specific and not subject to any bright-line rules. *See Ohio v. Robinette,* 519 U.S. 33, 38 (1996) (The Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact specific nature of the reasonableness inquiry."). Compliance with foreign law is one way to determine whether a foreign search is reasonable under the Fourth Amendment. *Barona*, 812 F.3d at 1093. However, even if a search does not comply with foreign law, it is United States law that "governs whether illegally obtained evidence should be excluded, and the

---

[1] The Fourth Amendment does *not* apply to intrusions conducted *exclusively* by foreign law enforcement authorities in their own country, even if the search is directed against a United States citizen. *See United States v. Rose,* 570 F.2d at 1361 (*citing Birdsell v. United States,* 346 F.2d 775, 782 (5th Cir. 1965)). In those circumstances, since the Fourth Amendment does not apply, there is similarly no reasonableness inquiry by a district court. Thus, district courts may admit evidence obtained by foreign officials who, acting alone, did not follow their own country's law in obtaining evidence, without regard to the Fourth Amendment, unless the methods used by the foreign authorities "shock the conscience." *See Barona,* 56 F.3d at 1091. Because the United States does not dispute application of the Fourth Amendment, a "shock the conscience" analysis is not warranted. Accordingly, the United States requests that the Court disregard the defendants' motion based upon a "shock the conscience" analysis.

essence of [the court's] inquiry is whether exclusion serves the rationale of deterring federal officers from unlawful conduct." *Id.* at 491. If foreign law was not complied with, a search may be upheld under the good faith exception to the exclusionary rule when United States officials reasonably rely on a foreign official's representations of foreign law. *Id.* at 492.

      **1.**      **The searches complied with Afghan law.**

The defendants assert that "numerous provisions of Afghan law were not complied with during the searches of the two USPI locations in Kabul." Defs.' Mem., at 17. Notably, the defendants identify the warrant requirements of Article 38 of the Afghan Constitution, which specifically applies to *residences and not businesses*. Defendants are correct that a court order or consent of an owner is required to search a residence. Further, as described in the attached Memorandum of Interview of General Qader Safee, former Chief Prosecutor for the City of Kabul, Afghanistan,[2] Article 38 is silent with regard to searches of a business and a written search warrant or court order is not required. The Constitution of Afghanistan offers no protections against government searches of businesses. Under Afghan law, a prosecutor, having reason to believe that a crime is being committed, has the authority to search a business together with the police, and consent from a judge or Afghan Court is not required. A prosecutor, however, must be present during execution of the search. General Safee and other prosecutors were present during the searches of USPI's offices in Kabul and supervised execution of the searches – in compliance with Afghan law. In addition, United States officials acted in

---

[2] The United States intends to call General Safee, who has been in law enforcement and a prosecutor for over twenty years, as a witness during the suppression hearing on September 9, 2009. He will testify on the legal requirements for searching businesses in Afghanistan, as well as the circumstances of the searches of USPI's offices by Afghan authorities on August 28, 2009.

good faith and in reliance of the representations of Afghan law enforcement that the appropriate laws were followed.[3] Accordingly, the searches are reasonable under the Fourth Amendment.

### 2. Probable cause existed to search USPI's offices in Kabul, Afghanistan.

While compliance with foreign law is one method to show that a foreign search was reasonable under the Fourth Amendment, there are no "bright-line rules" and the inquiry is fact-specific in nature. *See Ohio v. Robinette,* 519 U.S. at 38. USPI's offices in Houston and Waller, Texas were contemporaneously searched pursuant to warrants issued by Judge Frances Stacey in the Southern District of Texas. The criminal conduct described in the affidavit of Special Agent Elbert Cruz is the same conduct leading to the Afghan prosecutor's finding of reasonable suspicion and basis for the searches in Kabul. The United States submits that the Court may alternatively find the Afghan searches reasonable under the Fourth Amendment based upon Judge Stacey's finding of probable cause that certain violations of federal law may have occurred.

### C. The Search Warrants For USPI's Offices In Houston And Waller, Texas Were Sufficiently Particular.

The Fourth Amendment prohibition against general warrants requires the government to provide a particular description of the items to be seized. *See United States v. Maxwell,* 920 F.2d 1028, 1031 (D.C.Cir.1990). In assessing particularity, courts "'are concerned with realities of administration of criminal justice. It is sufficient if the warrant signed by the judicial officer is particular enough if read with reasonable effort

---

[3] The defendants assert that United States officials wrongly circumvented the letters rogatory process. Defs.' Mem., at 19. The letters rogatory process is largely a diplomatic tool and is irrelevant to this Court's finding regarding reasonableness under the Fourth Amendment. Further, the Afghan government executed the search, convicted, and incarcerated USPI employees, including one of the defendants in this case, Behzad Mehr, for fraud in violation of Afghan criminal law based upon evidence obtained during the searches.

by the officer executing the warrant.'" *United States v. Vaughn,* 830 F.2d 1185, 1186 (D.C.Cir.1987) (quoting *Moore v. United States,* 461 F.2d 1236, 1238 (D.C.Cir.1972)).

The defendants here assert that the warrants were not sufficiently particular because the affidavit was amended to not restrict the seizure of documents related to the criminal acts addressed in the affidavit prior to June 2003. In support of this contention, the defendants cite, *Marron v. United States,* 275 U.S. 192, 196 (1927)("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."), which sets forth the legal premise on why Judge Stacey's amendment was necessary. Judicial officers may not authorize seizure of items wherein a law enforcement officer is in a position to guess what he or she is authorized to seize. The affidavit restricted the time period from 2003, while Attachment B had no time restriction, and that inconsistency could have left federal agents questioning the scope of the items they were authorized to seize. Judge Stacey amended the affidavit and corrected any such defect.

Further, "a search warrant may be construed with reference to the affidavit supporting it for purposes of satisfying the particularity requirement. The affidavit may serve this function, however, only if (1) the affidavit accompanies the warrant, and in addition (2) the warrant uses suitable words of reference which incorporate the affidavit by reference." *Maxwell,* 920 F.2d at 1031. Here, the search warrants authorized seizure of "books, records, financial statements, work papers, correspondence, memorandums, bank records, and computers as further described in Attachment B" and incorporated the affidavit of Agent Cruz by reference. Attachment B identifies a specific list of documents, including, inter alia, accounting records, communications between the Louis Berger Group, Inc., ("LBGI") and USPI, tax returns, employee files, and documents that

were backdated or altered.

The defendants criticize that the warrants are "plagued" with constitutional deficiencies, partly due to Judge Stacey authorizing federal agents to seize certain documents, such as tax records and employee files. The affidavit specifically provides that USPI employees were falsifying their time sheets, as well as seeking separate maintenance allowance from the government when the employees were unmarried at the direction of certain defendants. The affidavit describes USPI falsifying documents for reimbursement of expenses for security personnel by adding phony names and thumbprints to employee lists. Thus, there is a direct reason identified in the affidavit why employee files were seized. Further, the conduct at issue and the time period addressed in Agent Cruz's affidavit specifically focuses on the Rehabilitation and Economic Facilities Program (REFS Program) so that federal agents had a concrete understanding of the precise documents to be seized. The agents therefore were not left guessing on the types of items they were authorized to seize. The warrants were sufficiently particularized pursuant to the Fourth Amendment.

In any event, assuming there were any ambiguities in Attachment B, the incorporation of the affidavit provided sufficient limitations on the government's search. *See United States v. Dale,* 991 F.3d 819, 847-48 (D.C. Cir. 1993); *Maxwell,* 920 F.2d at 1031; *Center Art Galleries-Hawaii, Inc. v. United States,* 875 F.2d 747, 749-50 (9th Cir.1989); *Rickert v. Sweeney,* 813 F.2d 907, 908-09 (8th Cir.1987) ("An affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant ... [or] is merely present at the search.").

**D.   The Search Warrant For USPI's Office In Waller, Texas Was Based Upon A Reasonable Finding Of Probable Cause.**

The defendants assert the Judge Stacey lacked probable cause to issue the search warrant for the Waller office because the "amended affidavit does not identify any particularized facts demonstrating a fair probability that any evidence of the alleged criminal activity was located there." (Defs.' Mem., at 27.) Judge Stacey thoroughly reviewed the 15-page affidavit of Special Agent Cruz, which identified USPI's *four* offices, including the one located in Waller, Texas. USPI is not a large corporation, and it is owned entirely by Defendant Barbara Spier. A "magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Sumler*, 924 F.Supp. 249 (D.D.C. 1996) (quoting *United States v. Ocampo,* 937 F.2d 485, 490 (9th Cir. 1991)). In making that determination, the magistrate is free to rely on the conclusions of experienced police officers regarding where evidence is likely found. *Id.* Judge Stacey's probable cause finding was reasonable, and the defendant's motion should therefore be denied.

**E.   The Defendants' Renewed Request For Discovery Should Be Denied.**

The defendants' renewed request for discovery of all documents "regarding the circumstances of the searches in Afghanistan and the good faith basis, if any, for the belief of U.S. law enforcement personnel that the Kabul searches of USPI premises were lawful," Defs.' Mot., at 1, should be denied, consistent with the Court's two prior rulings on this matter.

## **CONCLUSION**

For the foregoing reasons, the United States requests that the Court deny the defendants' motions.

                                              Respectfully submitted

                                              STEVEN A. TYRRELL
                                              Chief, Fraud Section

By:      */s/ Jennifer R. Taylor*
           JENNIFER R. TAYLOR
           D.C. Bar #497349
           United States Department of Justice
           Criminal Division, Fraud Section
           1400 New York Ave NW
           Bond Building, Third Floor
           Washington, DC  20009
           (202) 305-3611

Dated: August 19, 2009
        Washington, DC

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the United States' Response in Opposition to the defendants' Joint Motion for Reconsideration was served, via the Electronic Filing System, to counsel of record on this 19th day of August, 2009.

                                              */s/ Jennifer R. Taylor*
                                              Jennifer R. Taylor